**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-473-RJC**

| | | |
|---|---|---|
| JAMES M. DARNELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant Tyson Foods Inc., ("Tyson") Motion for Summary Judgment (Doc. No. 14), and Supporting Memorandum (Doc. No. 15), and Plaintiff James M. Darnell's ("Darnell") Response and Memorandum (Doc. Nos. 18 and 19). For the reasons stated below, the Court **GRANTS** the Defendant's Motion for Summary Judgment.

**I.    INTRODUCTION**

    A.    Procedural Background

Plaintiff Darnell brought this action asserting age discrimination pursuant to the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 and wrongful discharge based on North Carolina law. (Doc. No. 1: Complaint). Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about October 29, 2010 alleging that the discrimination occurred, at latest date, on May 13, 2010. (Doc. No. 1-1). On June 29, 2011 the EEOC furnished Plaintiff with a Notice of Right to Sue. (Doc. No. 1-3). Plaintiff filed suit in this Court on September 22, 2011. (Doc. No. 1).

B.   Factual Background

Mr. Darnell was born in 1947 and began working at Holly Farms, Inc., in 1969. (Doc. No. 19). Defendant Tyson Foods purchased Holly Farms in 1989. (Doc. No. 4). With the exception of a brief period in 1971, Plaintiff has worked for Holly Farms, and thereafter Tyson Foods, without interruption. (Doc. No. 19). Since 1992, Plaintiff worked at Tyson Foods' Monroe Processing Plant in Monroe, NC. (Id.). He was approximately sixty-three (63) years old during the relevant events. (Id.).

Plaintiff's claim for age discrimination involves his assignment to the position of maintenance supervisor of the third shift which operated overnight and whose purpose was to perform routine maintenance on the plant equipment to ensure its operational capacity for the following day. (Doc. Nos. 4, 15, 19). The usual hours for the third shift were from midnight until 8 a.m. (Doc. No. 15). Prior to this assignment, Darnell worked as a maintenance supervisor responsible for the labeling department. (Id.). His regular hours were from approximately 6 a.m. until 5 p.m. (Id.). The third shift lacked a maintenance supervisor following the elimination of several positions in 2009 due to cost reduction measures. (Id.). The elimination of these positions contributed to an increase in equipment failures and a decrease in production by the facility by the end of 2009. (Id.). Following the removal of the maintenance manager in 2010, the corporate headquarters dispatched Maintenance Specialist Dennis Joy to the facility to inspect the facility and to enact a plan to improve performance. (Id.). After conducting his evaluation of the facility, Mr. Joy concluded that a maintenance supervisor was needed on the third shift and that Mr. Darnell was the best candidate to assume such position (Id.).

Plaintiff had prostate surgery on April 14, 2010 and returned to work on April 22, 2010. The relevant events occurred in a series of meetings between April 23, 2010 and May 12, 2010

involving Plaintiff Darnell, Maintenance Specialist Dennis Joy ("Joy"), Plant Manager Jonathan Edwards ("Edwards"), and Human Resources Manager Leonard Parks ("Parks").[1]

April 24, 2010

Defendant maintains that it first informed Plaintiff of the decision to move him to the third (overnight) shift on April 23, 2010. Plaintiff does not recall such a meeting. Both parties agree that Plaintiff met with Joy, Edwards and Parks on April 24, 2010 to discuss moving Plaintiff to the third shift. (Doc. No. 22-1: Darnell Tr. at 185-86). Mr. Joy explained the rationale behind the move: Machines were regularly breaking down and management decided that they needed an experienced maintenance supervisor on the overnight shift to ensure that the equipment was ready for use the next day. (Doc. No. 22-2: Parks Tr. at 32). Plaintiff refused the move, declaring that: "There ain't no way in hell you are going to kill me the last couple of years that I plan on working here. There ain't no way in hell I'm going to do that." (Doc. No. 22-1: Darnell Tr. at 185-86). The meeting concluded without an agreement.

Following the conversation, Plaintiff requested and received two weeks vacation to consider his options. (Id. at 191).

May 10, 2010

Plaintiff returned to the Monroe Processing Plant on May 10, 2010. Plaintiff met with Mr. Parks and informed him that: "I couldn't take that third shift job, that I wasn't going to do it." (Id. at 220). In addition to the potential move to third shift, management provided Darnell

---

[1] Unless otherwise noted, these facts are drawn from the Complaint and the evidentiary material of record. Because Tyson is seeking summary judgment, all factual disputes have been resolved in favor of Darnell, as the party resisting summary judgment. In the instant case, the record contains disparities regarding the time and content of the conversations between management and Plaintiff. All disparities have been read in the light most favorable to Plaintiff. When ruling on a summary judgment motion, the Court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

with two other options: He could begin his shift at 3:00 a.m. and work until 1:00 p.m., or he could maintain his current hours working as a maintenance technician at an hourly rate (a lower wage). In an email dated May 10, 2010, Parks summarized the meeting and noted that he "[t]alked to James [Darnell] this afternoon about starting his shift coming in at 3:00 am. James [Darnell] said that he is not interested in doing this. I explained that we needed coverage for these hours and that we were asking him along with someone to stay over until he arrived each morning. Dennis [Joy] explain[ed] the reasons and the need to change the hours. I informed him that this is what we have for him to let us know Tuesday morning. He stated that he is not interested but would think about it." (Doc. No. 18-1: Email from Leonard Parks to Amanda Burcham, dated May 10, 2010).

May 12, 2010

The final meeting between Plaintiff and management occurred on May 12, 2010. Joy, Parks and Edwards once again asked Plaintiff if he would agree to move to the overnight shift, adjust his start time to 3:00 a.m., or work as an hourly technician. Plaintiff refused all three options. The conversation concluded with both parties holding to their terms: "I just come to the conclusion they're not going to bend and I'm not going to bend and I'm going home." (Doc. No. 18-1, Darnell Tr. at 220). Plaintiff left the meeting and never returned to the Monroe Processing Plant. (Id. at 221).

Replacement

Defendant initially covered Plaintiff's vacant position by extending the working hours of three other supervisors. (Doc. No. 14-7: Joy Tr. at 48). Eventually, Defendant hired a fifty seven (57) year old replacement for Plaintiff. (Doc. No. 14-4: Parks Affidavit at ¶ 9).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the moving party's case." Id. at 325.[2]

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

---

[2] Defendant cites to several facts in its Motion for Summary Judgment and Reply Brief without including the relevant evidentiary materials. The Court limits its consideration to those facts supported in the evidentiary record and disregards those not so supported. See FED. R. CIV. P. 56(c)(1)(A).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted).

## III.   ANALYSIS

### A.   Whether Plaintiff Filed a Timely Petition With the EEOC

Before a plaintiff may file suit under the ADEA, he is required to file a charge of discrimination with the EEOC. 29 U.S.C. § 626(d)(1)(A). Defendant maintains that the adverse actions alleged by Plaintiff transpired no later than April 24, 2010 which would render untimely his October 29, 2010 petition with the EEOC. An untimely petition deprives the federal courts of subject matter jurisdiction over the claim. See Jones v. Calvert, 551 F.3d 297, 300-01 (4th Cir. 2009). The period for a filing a claim begins to run "from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition." Price v. Litton Business Systems, Inc., 694 F.2d 963, 965 (4th Cir. 1982). Significantly, however, the limitation period "does not begin to run until the employee receives 'final and unequivocal' notice of the adverse employment decision in issue." Connolly v. Mills Corp., 430 F.Supp.2d (E.D.Va. 2006) (quoting English v. Whitfield, 858 F.2d 957, 961 (4th Cir. 1988).

In the immediate instance, Defendant gave notice to Plaintiff on April 24, 2010 of its intent to assign him to the overnight shift. As a result of Plaintiff's refusal, Defendant offered Plaintiff several other options including beginning his shift at 3:00 a.m., or keeping the same hours but doing so as an hourly employee. The record does not identify the exact moment in

which Defendant proposed final and unequivocal notice to Plaintiff. The most probative evidence is Mr. Parks' May 10, 2010 email in which Parks refers to a conversation he had that day with Plaintiff regarding the various options. Mr. Parks states that he "informed him [Darnell] that this is what we have and for him to let us know Monday morning. He stated that he is not interested but would think about it." (Doc. No. 18-1: Parks Email).

Evaluating the evidence in the light most favorable to Plaintiff, the Court identifies May 10, 2010 as the date on which Mr. Darnell received "final and unequivocal" notice of the decision to change the shift of Plaintiff, or alternately, to re-designate him as an hourly employee. Accordingly, Plaintiff's EEOC petition is deemed timely and the Court addresses the merits of Defendant's Summary Judgment Motion.

B.  ADEA Framework

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). Plaintiff has no direct evidence of age discrimination so he must proceed under the "pretext" framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 807 (1973). Under this framework, the plaintiff must prove a prima facie case of discrimination. See Hill v. Lockheed Martin Logistics Mgmt, Inc., 354 U.S. 277, 285 (4th Cir. 2004). If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for taking adverse action. Id. If the defendant meets this burden, the plaintiff must then demonstrate that defendant's stated reason is merely a pre-text for discrimination. Id.

C.  Plaintiff's Prima Facie Case

In order to make a prima facie showing of discrimination, Mr. Darnell, as Plaintiff, must demonstrate that: (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or he was replaced by a substantially younger individual.  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310-11 (1996).

Defendant does not dispute that Plaintiff, aged 63, is a member of a protected class or that he was performing his duties satisfactorily at the time of his termination.  Defendant argues that it chose Darnell to be overnight maintenance supervisor because he was the most qualified person for the position. (Doc. No. 18-3: Joy Tr. at 51-52).  Accordingly, the Court places its focus on the second and fourth prong of Plaintiff's prima facie case.

1. Whether the Change to Overnight Shift Constituted an Adverse Action

"An adverse employment action is a discriminatory act which adversely affects the terms, conditions or benefits of the plaintiff's employment."  James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004).  In proposing to move Plaintiff to the overnight shift, Defendant did not seek to reduce Plaintiff's pay or benefits.  (Doc. No. 22-1: Darnell Tr. at 201).  Plaintiff, additionally, does not argue that the change in shift constitutes a demotion or reduction in responsibilities.  Reassignment can "form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some detrimental effect."  Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999).  "Absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level

does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Id. (internal quotations marks and alteration omitted).

Although this Court recognizes that working an overnight shift can constitute a legitimate burden to a person accustomed to working normal hours, it is not persuaded that the facts alleged here constitute an adverse action sufficient to support Plaintiff's prima facie case. "A tangible employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, (1998) (emphasis added). Here, Plaintiff's job duties would remain the same with the exception of the time of day in which they were performed. (Doc. 22-1: Darnell Tr. at 201-02). Plaintiff would have been working the same number of hours as other maintenance supervisors at the plant. (Id. at 214). He would have worked the same amount of hours as he did before the shift change. (Id.). Plaintiff's two principle objections to the shift change were that he has difficulty sleeping during the day and that Defendant ignored his seniority in assigning him the overnight shift. The balance of the evidence suggests that Plaintiff's strong aversion to working the overnight shift was the primary factor in his refusal to accept the night shift. The Fourth Circuit has held that a person's subjective evaluation of an employer's decision is not sufficient, standing alone, to constitute an adverse action. "The mere reassignment to a less appealing job does not constitute an adverse employment action." Von Gunten v. Maryland, 243 F.3d 858, 868 (4th Cir. 2001).

As the party responding to a motion for summary judgment, Plaintiff bears the burden of showing that there was an adverse employment decision which can form the basis of an age

discrimination claim.  Shealy v. Winston, 929 F.2d 1009 (4th Cir. 1991).  Here, Plaintiff has offered abundant evidence to support the proposition that he found the move to the night shift unappealing.  He has not, however, offered evidence to support a finding that the move was adverse on any objective level.  Accordingly, Plaintiff fails to make a showing that the decision by Tyson constituted an adverse action to support a prima facie case of discrimination.

2.  Whether Defendant's Constructively Discharged Plaintiff

The evidentiary record likewise does not bear out Plaintiff's claim that the actions of Defendant amounted to a constructive discharge.  In order to show constructive discharge, a plaintiff must show that: (1) the employer deliberately made an effort to force the employee to quit; and (2) that the working conditions were intolerable.  Munday v. Waste Managment of N. Am. (4th Cir. 1997). Courts employ an objective rather than a subjective standard to determine whether working conditions are "intolerable."  Murray v. Waste Management of N. Am. Inc., 126 F.3d 239, 244 (4th Cir. 1997).  "The law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."  Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985).

Here, Plaintiff is able to satisfy neither of the prongs.  The record shows clearly that Defendant took significant measures–including offering to adjust his start time and offering him a day shift as an hourly employee–in order to prevent Plaintiff from quitting.  Additionally, Plaintiff offers no evidence to suggest that the third shift constitutes intolerable working conditions.  The evidentiary record supports only that Mr. Darnell, personally, had a strong aversion to working the overnight shift.  The record is devoid of evidence to suggest that working the night shift is objectively intolerable.

On balance, the record is replete with statements from the Plaintiff which indicate that he voluntarily resigned: "I just walked out ... I just come to the conclusion they're not going to bend and I'm not going to bend and I'm going home." (Id. at 220). Rather than being constructively discharged, Plaintiff voluntarily resigned his position at Tyson.[3]

### ii. Whether Defendant Was Replaced by a Substantially Younger Person

Following Plaintiff's departure from Tyson, management extended the hours of three supervisors to cover his shift. Eventually, management hired a replacement who was approximately six (6) years younger than Plaintiff. The Supreme Court examined the "substantially younger" requirement in O'Connor, 517 U.S. 308. The purpose of the test is to require the plaintiff to prove in his prima facie case "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." Id., 517 U.S. at 312 (quoting Teamsters v. United States, 431 U.S. 324, 358 (1977)). The substantially younger test is a more reliable indicator of age discrimination than merely evaluating whether the person who replaced plaintiff was a member of the ADEA's protected class. See Id., 517 U.S. at 313.

The Fourth Circuit has not identified any specific age differences as dispositive. See DeBord v. Washington County School Bd., 340 F.Supp.2d 710 (W.D.Va. 2004). Other circuits have generally held that age differences of less than ten years are insufficient to qualify as "substantial." See Grosjean v. First Energy Corp., 349 F.3d 332 (6th Cir. 2003); Balderston v.

---

[3] Plaintiff also alleges actual discharge at the hands of Defendant. This allegation is wholly unsupported by the evidentiary record and at odds with the factual account discussed elsewhere in this order. By all accounts, Defendant wanted Plaintiff to continue working in the same position, albeit on the overnight or early morning shift.

Fairbanks Morse Engine Div. of Coltec Indus., 328 F.3d 309, 321 (7th Cir. 2003).

In Kess v. Municipal Employees Credit Union of Baltimore, Inc., 319 F.Supp. 2d 637 (D.Md. 2004), the court found that a plaintiff "failed to carry her ultimate burden of establishing a reasonable inference of impermissible age discrimination" where a plaintiff who had been replaced by a worker eight years younger had offered only weak evidence to support the inference that the employment decision was based on illegal criteria. Here, the Court comes to a similar conclusion to the ruling in Kess. Absent any evidence to suggest discrimination, the six year age difference in this case is not sufficient by itself to satisfy the substantially younger requirement. Where the evidentiary record does not support such, "no inference of discrimination could be drawn from the replacement of one worker with another insignificantly younger." DeBord, 340 F.Supp.2d at 715 (quoting Hartley v. Wisconsin Bell, Inc., 124 F.3d 887 (7th Cir. 1997). Here, the Plaintiff has not offered sufficient evidence to demonstrate that the six year difference between him and his replacement suffices as "substantially younger."

The Court finds that Plaintiff has failed to offer facts to demonstrate a genuine issue for trial and to demonstrate a prima facie case of discrimination.

D.  Plaintiff's State Law Wrongful Discharge Claim

N.C. Stat. Gen § 143-422.2 prohibits "discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." For the reasons discussed above, this Court finds no genuine issue of material fact and is not convinced that a reasonable jury could return a verdict for Plaintiff based on the facts submitted to this Court.

Defendants' Motion for Summary Judgment is **GRANTED**.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Darnell has failed to establish a genuine issue of material fact with respect to his claim of discrimination under the ADEA and state law.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment, (Doc. No. 14), is **GRANTED** and Plaintiff's Complaint (Doc. No. 1), is **DISMISSED** with prejudice. The Clerk is directed to close this case.

Signed: December 7, 2012

Robert J. Conrad, Jr.
Chief United States District Judge